IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL STEVE DIXON,

    Plaintiff,                              No. 2:10-cv-1441 GEB KJN P

    vs.

S. LAROSA, et al.,                          <u>ORDER AND</u>

    Defendants.                             <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis,

with an action filed pursuant to 42 U.S.C. § 1983.  In his first amended complaint, plaintiff

names thirteen defendants, and raises various allegations of retaliation allegedly suffered after

plaintiff filed a prison grievance on August 23, 2009, concerning incidents that occurred after

August 17, 2009, the date plaintiff reported his cellmate had a pet rodent.  (Dkt. No. 12.)

Plaintiff alleges that his cell was improperly searched by defendant LaRosa on September 16,

2009, plaintiff was subjected to allegedly retaliatory bed moves, transferred between buildings,

given incompatible cellmates, and placed in administrative segregation ("ad seg"), allegedly in

retaliation for filing administrative appeals.  Plaintiff's motion for sanctions, and defendants'

motions to dismiss are now before the court.

II.  Motion for Sanctions

On July 5, 2011, plaintiff filed a motion for sanctions against defendants based on their failure to timely file their reply.  (Dkt. No. 53.)  Plaintiff contends that defendants' reply was filed two weeks late, because it was filed two weeks after plaintiff's opposition was filed, and therefore the reply should be disregarded.  On July 8, 2011, defendants filed an opposition, stating that counsel inadvertently calendared the deadline for seven court days rather than seven calendar days, and argues that under the court's May 4, 2011 order, the reply was due on or before June 15, 2011, and therefore the June 17, 2011 reply was only two days late.  Defendants contend the reply is helpful to the court, and argue that plaintiff suffered no prejudice by the two day delay because no additional briefing is allowed.

The court has the inherent power to impose sanctions when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons."  Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).  While the court's inherent power extends to all litigation abuses, the litigant must have "engaged in bad faith or willful disobedience of a court's order."  Chambers v. NASCO, Inc., 501 U.S. 32, 46-47 (1991); Fink, 239 F.3d at 992.  A finding of bad faith is warranted where an attorney or party knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.  Rodriguez v. United States, 2008 WL 4070886, at *3 (9th Cir. 2008).

Plaintiff correctly points out various court orders requiring a reply to be filed in seven days.  However, this does not address defendants' claim that the delayed filing was the result of an alleged miscalendaring of seven court days rather than seven calendar days, a distinction which can, depending on the time of year, result in a difference of three days.

Moreover, it is not an unreasonable interpretation of this court's May 4, 2011 order to argue that defendants' reply was due seven days after June 8, 2011, rather than seven days after plaintiff actually filed his opposition on June 3, 2011.  This construction renders defendants' reply two days late.  In addition, the court notes that there was a four day delay

1  between the June 3, 2011 filed date of plaintiff's opposition, and the date it was actually entered

2  on the court's docket on June 7, 2011.  (Dkt. No. 50.)  Seven days from June 7, 2011, would

3  render defendants' June 17, 2011 reply only three days late.

4          This court finds that the two or three day delay in filing the reply was not due to

5  defendants' bad faith, and does not prejudice plaintiff in any way.  Such a brief delay does not

6  warrant the imposition of sanctions, or the waiver of defendants' reply.  Plaintiff's motion for

7  sanctions is denied.  The court will consider defendants' reply filed June 17, 2011.

8  III.  Motions to Dismiss - Exhaustion

9          On March 8, 2011, defendants Knipp, White, Crosby, Martel, Thomason,

10  Grzebyk, Texeira, Foston, Harrington and Keenan filed a motion to dismiss based on plaintiff's

11  alleged failure to exhaust administrative remedies prior to filing the instant action.  (Dkt. No. 38-

12  1.)  On April 7, 2011, defendant Wilkins moved to dismiss on the same ground.  (Dkt. No. 45.)

13  After receiving an extension of time, on June 3, 2011, plaintiff filed a verified opposition.  (Dkt.

14  No. 50.)  Defendants filed a reply on June 17, 2011.  (Dkt. No. 51.)  After careful review of the

15  record, this court finds that the motions to dismiss based on plaintiff's failure to exhaust

16  administrative remedies should be granted.

17          The following is a chronology of events from plaintiff's amended complaint:

18          On August 17, 2009, plaintiff reported that his cellmate DeLeon had a pet rodent.

19  (Dkt. No. 12 at 6.)  Subsequently, plaintiff's cell was searched and the rodent removed.  This

20  action angered DeLeon, and plaintiff requested a different cellmate.  At some time between

21  August 18, 2009, and September 16, 2009, plaintiff was celled with inmate Daniels.  On August

22  23, 2009, plaintiff submitted an appeal concerning double-celling policy.  On September 16,

23  2009, defendant LaRosa searched plaintiff's cell.  On September 18, 2009, plaintiff filed a

24  grievance concerning the allegedly retaliatory September 16, 2009 cell search.

25          On September 27, 2009, plaintiff was moved to Building 4.  (Dkt. No. 12 at 18.)

26  On October 2, 2009, plaintiff agreed to move to Building 2.  On October 4, 2009, plaintiff's new

cellmate was moved to Building 1, and inmate Lopes was moved in with plaintiff.  On October 8, 2009, plaintiff and inmate Lopes were moved to Building 3.  On October 16, 2009, plaintiff told a correctional officer, "Get . . . Lopes out of here before I hurt him."  (Dkt. No. 12 at 17.)  On October 19, 2009, plaintiff was placed in ad seg based on plaintiff's verbal threat against his cellmate.  On October 22, 2009, plaintiff attended an Institution Classification Committee ("ICC") hearing regarding plaintiff's retention in ad seg.  (Dkt. No. 12 at 18-19.)  On November 19, 2009, plaintiff appeared before the ICC for a subsequent administrative placement review hearing.  (Dkt. No. 12 at 21.)

Specifically, plaintiff alleges five claims for relief in the August 27, 2010 first amended complaint:

1.  Defendants LaRosa, Keenan, Grzebyk, Crosby and White engaged in retaliatory conduct against plaintiff:  a cell search, bed and building moves, and assigned plaintiff to incompatible cellmates, advancing no legitimate penological interests, in violation of plaintiff's First and Eighth Amendment rights;

2.  Defendants Gamez, White and Harrington knowingly failed to respond to plaintiff's request for help, and permitted their subordinate correctional officers to violate plaintiff's constitutional rights, in violation of plaintiff's First and Eighth Amendment rights;

3.  Defendants White and Harrington violated plaintiff's First, Eighth and Fourteenth Amendment rights by placing plaintiff in ad seg;

4.  Defendants Harrington, Thomason, Knipp, Texeira, Martel, Wilkins and Foston failed to apply rules, policies and regulations to protect plaintiff's due process rights, in violation of plaintiff's Eighth Amendment rights; and

5.  Plaintiff also raises a state law claim alleging defendants failed to follow CDCR rules and regulations.

////

////

4

1    A. Legal Standard re Exhaustion

2    The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e

3 to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

4 § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

5 facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

6 Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S.

7 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of

8 confinement, whether they involve general circumstances or particular episodes, and whether

9 they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

10    Exhaustion of all "available" remedies is mandatory; those remedies need not

11 meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v.

12 Churner, 532 U.S. 731, 740 n.5 (2001). Even when the prisoner seeks relief not available in

13 grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532

14 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative

15 process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.

16 The fact that the administrative procedure cannot result in the particular form of relief requested

17 by the prisoner does not excuse exhaustion because some sort of relief or responsive action may

18 result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

19 of exhaustion requirement include allowing prison to take responsive action, filtering out

20 frivolous cases, and creating administrative records).

21    A prisoner need not exhaust further levels of review once he has either received

22 all the remedies that are "available" at an intermediate level of review, or has been reliably

23 informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d

24 926, 934-35 (9th Cir. 2005). Because there can be no absence of exhaustion unless some relief

25 remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

26 remained available, whether at unexhausted levels or through awaiting the results of the relief

1    already granted as a result of that process.  Id., 422 F.3d at 936-37.

2        As noted above, the PLRA requires proper exhaustion of administrative remedies.

3    Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an

4    agency's deadlines and other critical procedural rules because no adjudicative system can

5    function effectively without imposing some orderly structure on the course of its proceedings."

6    Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to

7    properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an

8    untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

9        The State of California provides its prisoners the right to appeal administratively

10   "any departmental decision, action, condition or policy which they can demonstrate as having an

11   adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides

12   them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at

13   § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

14   must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

15   on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

16   (4) third level appeal to the Director of the California Department of Corrections and

17   Rehabilitation.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code

18   Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the

19   exhaustion requirement under § 1997e(a).  Id. at 1237-38.

20       Non-exhaustion under § 1997e(a) is an affirmative defense which should be

21   brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

22   Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court

23   may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

24   remedies.  Id. at 1119-20.

25   ////

26   ////

6

1            B.  Analysis re Exhaustion

2            The instant complaint was filed on June 11, 2010.  Therefore, plaintiff was

3    required to exhaust his administrative remedies as to the instant claims on or before June 11,

4    2010.  Booth, 532 U.S. at 741.  Defendants provided the declaration of D. Foston, Chief of the

5    Inmate Appeals Branch, who provided a log of any appeals by plaintiff that were "accepted

6    and/or received and screened out at the Directors' level between January 1, 1997, and January 4,

7    2011." (Dkt. No. 38-6 at 2-7.)  Four of the appeals were exhausted through the Director's Level

8    of Review, and only two of those appeals are relevant to the allegations herein.[1]

9            1.  Log No. MCSP-09-01626

10           Plaintiff filed grievance MCSP-09-01626 on August 23, 2009.  (Dkt. No. 38-2 at

11   5.)  Plaintiff complained that his cellmate had a rodent, and sought a new cellmate.  (Dkt. No. 38-

12   2 at 5.)  Plaintiff reiterated key points concerning double-celling and integrated housing, focusing

13   on language suggesting inmates have an opportunity to express an opinion as to their assigned

14   cellmates.  (Dkt. No. 4[2] at 5.)  Plaintiff requested the following action:

15           Per Penal Code § 2079, all M.C.S.P. prison officials follow all
             CDCR directives, policies and procedures governing double-
16           celling and integrated inmate housing.  Issue an updated
             memorandum consist[ent] with these stated policies and
17           procedures, listed here.  NOT retaliate against this writer in any
             way, e.g., not changing his cell.

18

19   _____

20           [1]  In grievance MCSP-09-01213, filed May 11, 2009, plaintiff complained that he was
     improperly admonished for sewing 30 garments incorrectly.  (Dkt. No. 38-4 at 2-19.)  In
21   grievance MCSP-09-01609, filed August 24, 2009, plaintiff complained that prison officials
     mischaracterized plaintiff's incarceration history after an August 14, 2009 classification hearing.
22   (Dkt. No. 38-5 at 2-10.)  Plaintiff does not argue that either of these grievances exhaust the
     claims raised in the instant action.  (Dkt. No. 50 at 12-12.)

23           [2]  On June 17, 2010, plaintiff submitted exhibits for consideration with his civil rights
     complaint.  (Dkt. No. 4.)  By order filed August 27, 2010, plaintiff was informed that the court
24   would retain the exhibits, to which plaintiff could refer in connection with dispositive motions.
     (Dkt. No. 8.)  These exhibits are copies of plaintiff's efforts to exhaust the instant claims, some
25   of which are duplicated in defendants' exhibits to their motion to dismiss.  (Dkt. No. 38.)
             Plaintiff's exhibits are referred to by the page number provided by plaintiff on the lower
26   right-hand corner of each page.  (Dkt. No. 4.)

1    (Id.)  On the Formal Level of the appeal (Section D), signed September 7, 2009, plaintiff

2    reiterated that he wanted to maintain the action requested, "that is, inmates be permitted to

3    participate in cell[mate] selection."  (Id.)[3]

4              In the CDC 602 Response, dated September 29, 2009, prison officials note that

5    plaintiff's written appeal "did not address a specific issue."  (Dkt. No. 4 at 7.)  During the

6    interview, however, plaintiff clarified that "Mule Creek is not following policy and procedure

7    relevant to the integrated housing procedure."  (Id.)  Plaintiff requested that "all CDCR

8    directives, policies and procedures governing double-celling and integrated inmate housing be

9    followed," that "a memorandum consistent with these policies and procedures be put out to the

10   inmate population," and "that no retaliation be taken against [plaintiff] for this appeal."  (Id.)

11   After explaining how housing procedures work, plaintiff's requests that he be allowed to pick

12   who he cells with, and that a memo be issued was denied, and plaintiff's request that he not be

13   retaliated against was granted.  (Dkt. No. 7-8.)

14             On October 10, 2009, plaintiff requested a second level review, stating that the

15   September 29, 2009 response did not address a certain section of the housing code.  (Dkt. No. 4

16   at 4.)  Plaintiff added, "Also, see attach[ed] declaration detailing the retaliatory methods used

17   against me by Building One correctional officers."  (Id.)  Plaintiff's October 10, 2009 declaration

18   addressed various events from August 23, 2009, through October 9, 2009.  (Dkt. No. 4 at 11-18.)

19             In the second level decision, Warden Martel stated:

20             Although the [plaintiff] has attached an eight page "declaration,"
             outlining what [plaintiff] considers retaliatory bed moves against
21           him, [plaintiff] has provided no evidence to substantiate his
             allegations that the bed moves he notes are in retaliation to his
22           submission of this appeal.  The [plaintiff] is advised per CCR

23   _____

24   [3]  Plaintiff also states "continued on attachment," but it does not appear either party
     provided a copy of that attachment.  (Dkt. No. 4 at 3-60; Dkt. No. 38-2 at 3-30.)  Two
25   attachments to grievance MCSP 09-01626 are clearly marked by plaintiff.  The attachment for
     Section A is labeled "602 Attachment Re: Double-celling Procedures."  (Dkt. No. 4 at 5.)  The
     attachment for Section H is labeled "602 Section H Continued."  (Dkt. No. 4 at 6.)  There is no
26   similarly marked exhibit for Section D.

1      3084.2 a limit of one continuation page, front and back, may be
       attached to the appeal to describe the problem and action
2      requested.  The [plaintiff] has failed to submit any additional or
       new information at the Second Level of Review to warrant
3      modification of the First Level decision.  Therefore, no relief is
       warranted at the Second Level.
4

5   (Dkt. No. 38-2 at 8.)  Plaintiff's appeal was denied.  (Id.)

6              On November 25, 2009, plaintiff sought a Director's Level Review, stating:

7      This appeal is more about the double-celling procedures and/or
       improper practices than "[I]ntegrated Housing Assignments."
8      Reference to "integrated housing" procedures cited herein this
       appeal is strictly to show that inmates are suppose[d] to have input
9      (or "participate") in cellmate selection.

10  (Dkt. No. 38-2 at 6.)  In his attachment, plaintiff complained that the second level reviewer found

11  no evidence to substantiate plaintiff's claims that bed moves were done in retaliation, and

12  referenced plaintiff's eight page declaration reciting additional retaliatory actions.  (Dkt. No. 4 at

13  6.)  Plaintiff added:  "Note:  The facts disclosed in the declaration are also pending in another

14  602 appeal, specifically regarding retaliation, . . ."  (Id.)  Plaintiff further argues that the prison

15  officials who ruled on plaintiff's first and second levels of review were not impartial.  (Id.)

16             The Director's Level Decision found plaintiff's appeal issue was appropriately

17  addressed at the previous levels of review, and did not address the previously-provided

18  declaration, or issue a ruling on plaintiff's claims of retaliation.  (Dkt. No. 38-2 at 3-4.)

19             In Woodford, the Supreme Court held that, in order to exhaust administrative

20  remedies, the prisoner must comply with all of the prison system's procedural rules so that the

21  agency addresses the issues on the merits.  Id., 548 U.S. at 89-96.  Thus, exhaustion requires

22  compliance with "deadlines and other critical procedural rules."  Id. at 90.  Partial compliance is

23  not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison

24  officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The

25  Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of

26  prisoner suits "because some prisoners are successful in the administrative process, and others

9

1 are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

2       A review of defendants' evidence reveals that, while plaintiff filed grievance

3 MCSP-09-01626 concerning double-celling, including plaintiff's specific request that he be

4 allowed to choose his own cellmate, this grievance did not complain about subsequent alleged

5 retaliatory conduct.  Specifically, plaintiff complained that prison officials had not followed the

6 correct procedure with respect to double-celling or integrated housing.  This grievance, signed

7 August 23, 2009, challenged an action taken prior to the subsequent allegedly retaliatory acts.

8 Indeed, plaintiff alleges it was the filing of grievance MCSP-09-01626 that caused defendants to

9 retaliate.  Therefore, this grievance cannot serve to exhaust plaintiff's subsequent claims that he

10 suffered retaliatory acts based on the filing of this grievance because it precedes the alleged

11 retaliatory acts.  Plaintiff's inclusion of a request that prison officials not retaliate against him is

12 insufficient to put prison officials on notice of plaintiff's subsequent claim that defendants

13 allegedly did retaliate against plaintiff.  Plaintiff's initial grievance MCSP-09-01626 regarding

14 double-celling and integrated housing policy did not substantively provide prison officials a full

15 and fair opportunity to address plaintiff's retaliation claims.  Moreover, it appears plaintiff

16 conceded he was pursuing his retaliation claim in a separate appeal by stating:  "The facts

17 disclosed in the declaration are also pending in another 602 appeal, specifically regarding

18 retaliation."  (Dkt. No. 4 at 6.)

19       In addition, plaintiff's efforts to interject his retaliation claims at the second level

20 of review by appending the October 10, 2009 declaration raising new claims[4] are unavailing.

21 Section 3084.5(b) states that "[a]ll appeals shall be initially filed and screened at the first level."

22

23     [4]  Two other documents provided by defendants refer to plaintiff's eight page declaration.
On October 13, 2009, an unidentified appeal was screened out at the first level because plaintiff
had appended unnecessary documents.  (Dkt. No. 38-3 at 28.)  On the same date, plaintiff typed

24 at the top of the notice, a note indicating he removed "much of the documents suggested," but the
"attached declarations fall within 3084.2(2) as they support [plaintiff's] retaliation claim."  (Dkt.

25 No. 38-3 at 28.)  On October 14, 2009, in a notice marked "screening at the FIRST level,"
plaintiff was informed that his eight page declaration exceeded the one page allowed pursuant to

26 § 3084.2(a)(1), and was being returned to plaintiff.  (Dkt. No. 38-3 at 27.)

Cal. Code Regs. tit. 15, § 3084.5(b).  Moreover, as noted in the second level decision, plaintiff's attempted filing exceeded the page limit set forth in § 3084.2.  Id.  This decision gave plaintiff notice that his eight page declaration raising new claims was improperly filed.  Finally, § 3084.2(b)(1) only permitted the attachment of supporting documents which are "necessary to clarify the appeal":

> Attachments shall not raise new issues, but shall only serve to clarify the present appeal issue and action(s) requested . . .  New issues raised in the supporting documents shall not be addressed and any decision rendered will pertain only to the present appeal issue and requested action(s).

Cal. Code Regs. tit. 15, § 3084.2(b)(1).  Plaintiff failed to comply with the prison's procedural rules; therefore, plaintiff's attempt to add new claims during the exhaustion of a different appeal cannot serve to exhaust plaintiff's alleged new retaliation claims.  See Woodford, 548 U.S. at 90-91; See Sapp v. Kimbrell, 623 F.3d 813, 825 (9th Cir. 2010) (prisoner's claim for medical care of an eye condition was not exhausted because the prisoner raised the issue for the first time in a second-level appeal of an earlier grievance that only complained about medical care of a skin condition).  The additional complaints raised by plaintiff were disregarded at the Director's Level, and the fact that they were not addressed further does not render them exhausted.  See Henderson v. Rodriguez, 2009 WL 817750, at *3-4 (E.D. Cal. 2009) ("Plaintiff has not directed the Court to any requirement that the Director of Inmate Appeals assist Plaintiff in managing his grievances.").[5]

---

[5]  But see Rodgers v. Tilton, 2011 WL 2709078 (E.D. Cal. July 11, 2011) (where plaintiff first raised catheter incident at Director's Level of Review, and prison officials failed to address the issue and informed plaintiff that the decision exhausts the administrative remedy available with CDCR, no further relief was available through the administrative appeals process.).  In Rodgers, all of plaintiff's claims alleged deliberate indifference to Rodgers' serious medical needs.  Here, plaintiff's initial challenge was to double-celling and integrated housing policy, and plaintiff was attempting to add a retaliation claim.  Also, it has been this court's experience that the third level review often contains the boilerplate language "This decision exhausts the administrative remedy available to the appellant within CDCR."  (Dkt. No. 38-2 at 4.)  Indeed, here, that language did not prevent plaintiff from filing his second grievance alleging retaliation in connection with the September 16, 2009 cell search.  This boilerplate statement does not

1    Here, plaintiff informed prison officials that he was pursuing his retaliation claim

2   in another grievance, thereby continued to focus this grievance as challenging the double-celling

3   procedures, and alleges it was the filing of grievance MCSP-09-01626 that allegedly caused

4   defendants to retaliate.  Therefore, this grievance cannot serve to exhaust plaintiff's subsequent

5   claims that he suffered retaliatory acts based on the filing of this grievance because it preceded

6   the alleged retaliatory acts.

7    For all of the above reasons, grievance MCSP-09-01626 does not exhaust any of

8   plaintiff's alleged retaliation claims, or any claims arising after August 23, 2009.

9    2.  Log No. MCSP-09-02012

10    Plaintiff filed grievance MCSP-09-02012 on September 18, 2009, complaining

11   that defendant LaRosa retaliated against plaintiff for filing grievance MCSP-09-01626, by

12   searching and allegedly "trashing" plaintiff's cell on September 16, 2009.  (Dkt. No. 38-3 at 4.)

13   Plaintiff requested the following action:

14         That C/O LaRosa or any other correctional staff desist in any
          further retaliation or the appearance of retaliation against me, be it
15         unreasonable cell and/or body searches, unwanted cell moves, or
          any other unreasonable action against me per Title 15, § 3084.7(d)
16         and § 3287(a)(1) & (2).

17   (Dkt. No. 38-3 at 4.)  On September 22, 2009, an informal response issued.  The informal

18   response identified plaintiff's claim as alleging defendant LaRosa's September 16, 2009 cell

19   search was excessive and unreasonable when compared to the three prior cell searches.  (Dkt. No.

20   38-3 at 22.)  The entirety of this appeal response focused on plaintiff's challenge to the

21   September 16, 2009 cell search and the relief sought in grievance MCSP-09-01626.  (Dkt. No.

22   38-3 at 22-26.)  The only reference to bed moves was the denial of plaintiff's request to be

23   exempt from unwanted bed moves.  (Dkt. No. 38-3 at 26.)  On October 10, 2009, plaintiff sought

24   formal level review, claiming the informal response "overlooked the chronological order of

25

26   appear to preclude a prisoner from properly exhausting claims that arise after the filing of the
     initial grievance.

events that took place, which formed the retaliation claim, and now compounded by more retaliation, should not be negated." (Dkt. No. 38-3 at 9.)  Plaintiff attached his declaration[6] and a second declaration from witness inmate Viruegas (id. at 16.)

In the December 9, 2009 appeal response, the appeal issue was identified as challenging the September 16, 2009 cell search as retaliatory and alleging defendant LaRosa trashed plaintiff's cell.  (Dkt. No. 38-3 at 41.)  Plaintiff's request to have defendant LaRosa or any other correctional staff "desist in any further retaliation or the appearance of retaliation against [plaintiff], be it unreasonable cell and/or body searches, unwanted cell moves, or any other unreasonable action against [plaintiff] per Title 15 [was] granted." (Id.)  The reviewing officers found that plaintiff failed to show that any cell search was a result of retaliation; that the searches were conducted over a reasonable period and the items confiscated were contraband. (Id.)  The reviewing officers also stated that plaintiff had "not shown that any bed moves [plaintiff] incurred were the result of retaliation." (Dkt. No. 38-3 at 42.)

Plaintiff expressed dissatisfaction with the response, stating:

> Unfortunately, my retaliation claim extends beyond C/O LaRosa but involves several correctional staff.  See attached November 3, 2009 declaration adding:  (1) Correction Officers Crosby and Grzebyk, Corr. Sergeants Gamez and White and Correctional Captain Harrington, for the specific acts stated in my declaration . . . .

(Dkt. No. 4 at 64.)  The appended declaration, dated December 18, 2009, reiterated plaintiff's claim that the cell search was performed in retaliation for plaintiff's double-celling grievance, and discussed plaintiff's desire to be assigned a compatible cellmate, plaintiff's "unjust" removal from Building 1, and plaintiff's unreasonable placement in ad seg, which plaintiff alleged were retaliatory acts.  (Dkt. No. 4 at 69.)

In the January 14, 2010 second level response, Warden Martel identified plaintiff's appeal issue as plaintiff's claim that his cell was trashed during a cell search on

---

[6]  It appears plaintiff attached his November 3, 2009 declaration, in which plaintiff recounts events from September 18, 2009, to October 8, 2009.  (Dkt. No. 4 at 67-68; 38-3 at 12.)

1    September 16, 2009, and that his cell was searched frequently.  (Dkt. No. 38-3 at 7.)  Warden

2    Martel found that the first level review appropriately addressed plaintiff's claim, and confirmed

3    that the items confiscated were appropriately confiscated as unauthorized property.  (Id. at 8.)

4    Warden Martel also found that plaintiff failed to support his allegation that defendant LaRosa

5    acted inappropriately or that he or any other correctional staff acted in an unprofessional manner.

6    (Id.)  The appeal was granted in part based on CCR § 3084.1(d), "No reprisal shall be taken

7    against an inmate or parolee for filing an appeal"  (Dkt. No. 38-3 at 8.)

8              Grievance MCSP-09-02012 was exhausted at the Director's Level of review in an

9    undated denial.  (Dkt. No. 38-3 at 2-3.)  The Inmate Appeals Branch found that the September

10   16, 2009 cell search was not unreasonable, and that plaintiff would "not be exempt from cell

11   and/or body searches, cell moves, or any other action determined to be necessary to ensure the

12   security of the institution."  (Dkt. No. 38-3 at 3.)  The Inmate Appeals Branch noted that:

13               The appellant has added new issues and requests to his appeal.
                 The additional requested action is not addressed herein as it is not
14               appropriate to expand the appeal beyond the initial problem and the
                 initially requested action (CDC Form 602, Inmate/Parolee Appeal
15               Form, Sections A and B).

16   (Dkt. No. 38-3 at 3.)

17             For purposes of the PLRA's exhaustion requirement, "a grievance suffices if it

18   alerts the prison to the nature of the wrong for which redress is sought."  Griffin v. Arpaio, 557

19   F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted).

20               A grievance need not include legal terminology or legal theories
                 unless they are in some way needed to prove notice of the harm
21               being grieved.  A grievance also need not contain every fact
                 necessary to prove each element of an eventual legal claim.  The
22               primary purpose of a grievance is to alert the prison to a problem
                 and facilitate its resolution, not to lay groundwork for litigation.
23

24   Id.  Ultimately, a grievance must "provide enough information . . . to allow prison officials to

25   take appropriate responsive measures."  Id., 557 F.3d at 1121 (internal quotation marks omitted).

26             Here, the focus of grievance MCSP-09-02012 was plaintiff's claim that defendant

14

1   LaRosa's September 16, 2009 search of plaintiff's cell was excessive, unreasonable and allegedly

2   in retaliation for plaintiff's grievance regarding double-celling.  Indeed, plaintiff's attachment is

3   entitled, "Cell Trashed During Improperly Frequent Cell Search."  (Dkt. No. 38-3 at 10.)  There

4   is no indication that there were subsequent retaliatory actions by other correctional officers such

5   as excessively subjecting plaintiff to bed moves or placing him in ad seg, or that plaintiff was

6   alleging ongoing retaliatory acts.  See Masterson v. Campbell, 2007 WL 2536934, at *12 (E. D.

7   Cal. Aug. 31, 2007) (in one initial administrative grievance, plaintiff described a prison officials'

8   decision was "possibly part of a pattern of retaliation imposed on [him] for filing a staff

9   complaint for sexual harassment/misconduct," which was sufficient to exhaust retaliation claim.)

10   In addition, the alleged bed moves could not have been included in grievance MCSP-09-02012,

11   which plaintiff signed on September 18, 2009, because the first allegedly retaliatory bed move

12   was made on September 27, 2009, after grievance MCSP-09-02012 was submitted.  Also,

13   plaintiff was not placed in ad seg until October 19, 2009.

14          Moreover, as noted above, prison policies require plaintiff to submit his

15   grievances to the first level of review; plaintiff cannot raise new claims during the appeals

16   process.  Cal. Code Regs tit. 15, § 3084.2(b)(1).  Plaintiff's response to the first level review

17   demonstrates that plaintiff was attempting to raise new claims during the appeal process.  (Dkt.

18   No. 4 at 64.)  Although plaintiff's new claims also alleged retaliation, the new allegations

19   differed in time, type and responsible parties.  Plaintiff's initial grievance solely addressed the

20   September 16, 2009 cell search by defendant LaRosa, and required comparison to plaintiff's

21   prior cell searches.  Plaintiff later contended that he suffered allegedly retaliatory bed moves and

22   a placement in ad seg by other correctional officers.[7]  Thus, plaintiff's initial grievance could not

23

24          [7] Plaintiff is correct that he is not required to identify each named defendant in his
administrative appeals.  Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001) ("As long

25   as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require
a prisoner plaintiff to present fully developed legal and factual claims at the administrative

26   level.").  However, plaintiff is required to allege facts sufficient to alert prison officials to the

1    put prison officials on notice of the allegedly retaliatory bed moves or placement in ad seg,

2    because the initial grievance only addressed the allegedly retaliatory cell search by defendant

3    LaRosa on September 16, 2009.  See Sapp, 623 F.3d at 825 (issue raised for the first time in a

4    second-level appeal of an earlier grievance cannot exhaust different claim).

5            The Director's Level review noted that plaintiff's attempt to add new claims was

6    inappropriate and declined to address them.  Sapp, 623 F.3d at 825.  Thus, plaintiff's new claims

7    were properly screened out as plaintiff failed to include them at the first level of his appeal.  Only

8    the September 16, 2009 cell search was addressed in the Director's Level Decision.  Therefore,

9    neither plaintiff's new retaliation claims nor plaintiff's claims concerning conduct occurring after

10   September 18, 2009, were exhausted by grievance MCSP-09-02012.

11                      3.  March 28, 2010 Appeal

12           On October 19, 2009, plaintiff signed an ad seg placement notice.  (Dkt. No. 4 at

13   93.)  The notice states that plaintiff was placed in ad seg for allegedly threatening plaintiff's

14   cellmate.  (Id.)  Plaintiff claims he stated "Get . . . Lopes out of here before I hurt him."  (Dkt.

15   No. 12 at 17.)  Plaintiff appeared before the ICC on October 22, 2009, and his ad seg

16   commitment was extended.  (Dkt. No. 12 at 18.)  On November 4, 2009, plaintiff appeared

17   before Lt. Baroga, Senior Hearing Officer, to hear the CDC-115 issued based on plaintiff's verbal

18   threat.  (Dkt. No. 12 at 19.)  Plaintiff was assessed thirty days' loss of behavioral credit, thirty

19   days' loss of yard privileges, and thirty days' loss of telephone privileges.  (Dkt. No. 12 at 20.)

20   On November 19, 2009, plaintiff appeared for another ICC hearing.  (Dkt. No. 12 at 21.)

21           On March 28, 2010, plaintiff filed an appeal, in which he challenged certain

22   details of the November 19, 2009 CDC-128G Chrono.  (Dkt. No. 4 at 114.)  Plaintiff stated he

23   received this chrono on or about March 25, 2010.  (Id.)  Plaintiff contended that the full

24   committee recommended that plaintiff be put back on the support services and PIA waiting list,

25   ─────────────────

26   nature of the wrong alleged.

but that M. Eloza informed plaintiff that he had only been put back on the support services

waiting list.  (Id.)  Plaintiff also disputed the committee's reference to plaintiff's "ongoing

disciplinary history."  (Id. at 114-15)  In addition, plaintiff complained that the punishment

assessed was unjust.  (Id. at 115.)  Plaintiff requested the following action:

> Per Title 15, § 3376(d)(2)(A), correct the inaccuracies, which entail
> the required "mitigation" needed to reassess punishment, and
> would, respectfully, return me to A1/A status and place me at the
> top of the PIA waiting list; to return to job assignment where 101s
> clearly reflect above average work participation nearly ten years on
> same job.

(Dkt. No. 4 at 114.)

On April 1, 2010, plaintiff wrote a letter to the Inmate Appeals Branch

challenging the rejection of plaintiff's March 28, 2010 appeal as untimely.  (Dkt. No. 4 at 110.)

Plaintiff confirmed that he had received the classification chronos dated November 4, 2009, and

December 10, 2009, but did not receive the third chrono, dated November 19, 2009, until shortly

after M. Eloza, Correctional Counselor I, signed the form on March 25, 2010.  (Id.)

On May 10, 2010, the Chief of the Inmate Appeals Branch notified plaintiff that

plaintiff's appeal IAB# 0920176 custody/class "was rejected, withdrawn or cancelled at the

institution level.  If you disagree with that decision, contact the Appeals Coordinator.  You must

comply with instructions from that office."  (Dkt. No. 4 at 109.)

In California, the date for filing a grievance is fifteen working days from the date

the administrative decision or action being complained of is taken.  See Cal. Code Regs. tit. 15,

§ 3084.6(c).  Thus, a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or

otherwise procedurally defective administrative grievance or appeal."  Woodford, 548 U.S. at 83-

84.

Plaintiff was aware of his placement in ad seg on October 19, 2009, and was

present during the November 4, 2009 hearing where the punishment was imposed, and was

present at the ICC hearing on November 19, 2009.  Thus, plaintiff's March 28, 2010 appeal was

untimely as it was not filed fifteen working days after any of these events, and was therefore properly screened out.

Admittedly, whether or not plaintiff's March 28, 2010 appeal was timely, a liberal reading of the appeal reflects that plaintiff's main concern was getting back on the PIA waiting list so that he could get back to work. This court is aware that a grievance "need not contain every fact necessary to prove each element of an eventual legal claim." Griffin, 557 F.3d at 1120. "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id. (citation omitted). Here, however, the genesis of plaintiff's appeal was plaintiff asking M. Eloza to find out where plaintiff was on the PIA waiting list. When plaintiff found out he wasn't on the list, he filed this appeal. This appeal does not mention retaliation, or challenge plaintiff's placement in ad seg based on alleged retaliatory conduct claimed in the instant action. Rather, the appeal seeks to correct "inaccuracies" in the chrono and to get plaintiff back on the PIA waiting list. Plaintiff does not allege that it was these inaccuracies that demonstrate retaliation. The instant complaint does not allege retaliation based on defendants' failure to put plaintiff on the PIA waiting list, or the alleged misstatement of plaintiff's "ongoing disciplinary history." Rather, plaintiff claims that it was his placement, and lengthy retention, in ad seg, and perhaps the way he was treated during the ad seg placement hearing, that demonstrates retaliation. Therefore, this appeal, even if timely brought, could not exhaust the instant retaliation claims.

### 4. Other Efforts to Exhaust

On September 21, 2009, plaintiff wrote a letter to Internal Affairs identified as "RE: Staff Complaint/Retaliation." (Dkt. No. 4 at 89.) Plaintiff stated that he was sending a copy of his CDCR-602 Inmate Appeal "[b]ased on the inmate appeals being whitewashed, without proper investigation." (Id.) Plaintiff did not provide an appeal number or description of the appeal. The Office of Internal Affairs forwarded plaintiff's letter to Chief Deputy Warden Duncan Fallon, who wrote plaintiff on October 8, 2009, and listed the various options that were

1  available to resolve plaintiff's issue.  (Dkt. No. 4 at 90.)

2          On October 26, 2009, plaintiff wrote a letter to Internal Affairs "because of being

3  retained in" ad seg.  (Dkt. No. 12 at 19.)  Plaintiff recounted the events of the quick October 22,

4  2009 ICC hearing, and argued his placement in ad seg was "highly suspect and extremely

5  excessive."  (Dkt. No. 4 at 97.)  Plaintiff also mentioned his appeals concerning double-celling

6  and the alleged retaliatory cell search by defendant LaRosa, as well as his September 21, 2009

7  letter to Internal Affairs.  (Id.)  Plaintiff sought an impartial review of his situation.  (Id.)

8          Finally, plaintiff provided a copy of Warden Martel's December 22, 2009

9  memorandum regarding "Determination of Staff Complaint."  (Dkt. No. 4 at 100.)  Warden

10  Martel reviewed plaintiff's December 18, 2009 appeal and determined that the "appeal does not

11  meet the requirement for assignment as a staff complaint."  (Id.)  It appears that this

12  determination was rendered in connection with plaintiff's grievance MCSP 09-02012,[8] as

13  Warden Martel refers to it in the second level appeal response issued January 14, 2010.  (Dkt.

14  No. 4 at 107.)  Warden Martel stated that because the appeal issue did not meet the criteria for

15  processing as a staff complaint, "a confidential fact finding inquiry was not conducted."  (Id.)

16          Letters to Internal Affairs do not demonstrate exhaustion of administrative

17  remedies under the PLRA.  See Woodford, 548 U.S. at 91, 93 (exhaustion under the PLRA

18  requires "compliance with an agency's deadlines and other critical procedural rules"); Wilson v.

19  Wann, 2008 WL 4166886, at *2 (E.D. Cal. Sept. 8, 2008) (letters to Internal Affairs and warden

20  were insufficient to show exhaustion); see also Lees v. Felker, 2009 WL 2824862, at *5 (E.D.

21  Cal. Sept. 1, 2009) (letter to warden is not an alternative method to the inmate grievance process

22  for exhausting administrative remedies); Panaro v. City Of North Las Vegas, 432 F.3d 949, 954

23  (9th Cir. 2005) (participation in internal affairs investigation did not exhaust).  Therefore,

24  plaintiff's letters to Internal Affairs do not exhaust plaintiff's claims herein.

25

26        [8]  This conclusion is confirmed by a handwritten note in the right hand corner of MCSP-09-02012 which states, "Not a 7b per the Warden 12/22/09."  (Dkt. No. 4 at 63.)

1        The filing of a staff complaint can present a closer question.  In certain

2  circumstances the regulations make it impossible for the inmate to pursue a grievance through

3  the entire grievance process.  See Brown v. Valoff, 422 F.3d at 939 n.11.  Where a claim

4  contained in an inmate's grievance is characterized by prison officials as a "staff complaint," and

5  processed through a separate confidential process, prison officials lose any authority to act on the

6  subject of the grievance.  See id. at 937 (citing Booth, 532 U.S. at 736 n.4).  Thus, the claim is

7  exhausted when it is characterized as a "staff complaint."  See id. at 940.

8        Here, however, plaintiff's December 18, 2009 appeal was not characterized by

9  prison officials as a staff complaint.  Rather, prison officials determined the appeal was not a

10  staff complaint.  Because the appeal was not treated as a staff complaint, no separate confidential

11  process ensued, and prison officials did not lose the authority to act on plaintiff's appeal.  Thus,

12  plaintiff is not entitled to a finding of exhaustion based on the December 22, 2009 memorandum.

13        5. Conclusion

14        The purpose of the prison appeals process is to give prison officials notice of the

15  problem and an opportunity to correct it, as well as to create a factual record of the events in

16  question.  Irvin, 161 F.Supp.2d at 1135.  An inmate grievance does not exhaust issues not fairly

17  set forth in the grievance.  Morton v. Hall, 599 F.3d 942, 945-46 (9th Cir. 2010).[9]  The only

18  claim plaintiff fairly exhausted prior to filing the instant action is plaintiff's claim that defendant

19  LaRosa allegedly retaliated against plaintiff by "trashing" plaintiff's cell during a cell search on

20  September 16, 2009, and that defendant Keenan came to plaintiff's cell after the cell search.

21  Plaintiff did not fairly grieve his claims that certain prison employees subjected plaintiff to

22  numerous bed moves, allegedly in retaliation for plaintiff's double-celling grievance, or that

23

24        [9] In Morton, the Ninth Circuit noted that "the Form 602 Morton filed relating to the
visitation restriction does not even mention the assault or theorize that the visitation restriction

25  imposed was related to the assault," and found that "this was insufficient to put prison officials
on notice of Morton's complaint that prison-staff conduct contributed to his June 2003 assault."

26  Id. at 946.

1   plaintiff was given incompatible cellmates, or that they placed and retained plaintiff in ad seg,

2   allegedly in retaliation.  Any defendants named based on their supervisory role in connection

3   with these unexhausted claims, even if the claims were cognizable, are therefore also

4   unexhausted.  Accordingly, plaintiff's claims against defendants Knipp, White, Crosby, Martel,

5   Thomason, Grzebyk, Texeira, Foston, Harrington, Keenan, and Wilkins should be dismissed

6   without prejudice based on plaintiff's failure to exhaust administrative remedies prior to plaintiff

7   filing in federal court.  Booth, 532 U.S. at 741.

8   IV.  Failure to State a Civil Rights Claim

9           A.  Motion to Dismiss

10          Defendants also move to dismiss plaintiff's claims against all of the defendants,

11  except defendants LaRosa and Gamez,[10] arguing that the allegations fail to state a cognizable

12  claim under 42 U.S.C. § 1983.  The court need not address those defendants for whom plaintiff

13  failed to first exhaust his administrative remedies.  The remaining defendants and claims will be

14  addressed seriatim.

15          Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

16  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

17  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

18  court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551

19  U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

20  McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

21  1999).  In order to survive dismissal for failure to state a claim, a complaint must contain more

22  than "a formulaic recitation of the elements of a cause of action;" it must contain factual

23  allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v.

24  Twombly, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement

25

26          [10]  The court ordered service of process on defendant Gamez on July 7, 2011.  (Dkt. No.
    54.)  A return of service has not yet been filed.

1  [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon

2  which it rests.'" Erickson, 551 U.S. 89 (citations omitted).

3         A motion to dismiss for failure to state a claim should not be granted unless it

4  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

5  would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Palmer v.

6  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In general, pro se

7  pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

8  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

9  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's

10  liberal interpretation of a pro se complaint may not supply essential elements of the claim that

11  were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

12                 i.  Cell Search Allegations as to Defendant Keenan

13         Plaintiff named defendant Keenan in connection with plaintiff's cell search claim

14  against defendant LaRosa.  Defendants argue that plaintiff failed to allege any facts linking

15  defendant Kennan to the allegedly retaliatory cell search.  (Dkt. No. 38 at 6.)  Plaintiff argues that

16  he included detailed facts concerning Keenan's involvement in plaintiff's September 18, 2009

17  appeal.  Plaintiff states that defendant Keenan came by the cell after the cell search with a cell

18  search slip and asked plaintiff's roommate about certain tennis shoes that were confiscated.

19  (Dkt. No. 50 at 16.)  Plaintiff reiterates the facts included on the attachment to grievance MCSP-

20  09-02012, concerning actions defendant Keenan took after the cell search.  (Id., Dkt. No. 4 at 65-

21  66.)  Plaintiff argues that although he did not provide a detailed account of defendant Keenan's

22  involvement with defendant LaRosa on the cell search, the exhibits appended to his grievance

23  provide a broader picture of the issues in question.  (Dkt. No. 50 at 17.)  Plaintiff contends that

24  defendant Keenan's "statement suggest that he was inside the cell with LaRosa."  (Dkt. No. 50 at

25  17.)  Defendants did not address this issue in their reply.

26  ////

In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

In his first claim for relief, plaintiff states that:

> Defendants LaRosa and Keenan [FN 10], individually and jointly, conspired together to trash plaintiff's cell and confiscate allotable items as harassment and punishment for exercising his First Amendment right to file a prison grievance.
>
> > [FN 10]  Before the 602 was filed against Building #1 officers for improper inmate housing assignment practices, Keenan searched plaintiff's cell and left it as he found it, without confiscating anything; a few days before LaRosa's search.  2nd Watch Bldg. #1 officers clearly conveyed information of the 602 to 3rd Watch Bldg. #1 officers, which evoked plaintiff's cell being trashed.  The second 602 caused plaintiff to be re-housed to another building and another cell on three different occasions.

(Dkt. No. 12 at 25.)  The sole paragraph plaintiff recites in support of this cell search claim as to defendant Keenan states:

> 29.  On September 16, 2009, both Third Watch Building #1 floor officers Defendants S. LaRosa and J. Keenan were working the evening plaintiff's cell was trashed.  Defendant Keenan had previously searched plaintiff's cell the week before on September 10, 2009 and nothing was confiscated.  On August 8, 2009, defendant LaRosa had searched plaintiff's cell and confiscated, rightfully so, cardboard.  On September 16, 2009, however,

defendant LaRosa had searched plaintiff's cell and confiscated not only what he deemed contraband but allowable items as well, such as cleaning supplies.  Plaintiff had the very same items when both Defendants LaRosa and Keenan searched his cell on August 8, 2009 and September 10, 2009, which neither officer/defendant confiscated.

(Dkt. No. 12 at 9.)  In the grievance related to the September 16, 2009 cell search, plaintiff

states:

Once we were inside the cell on 9/16/09 and began straightening out the mess created by C/O LaRosa, C/O Keenan brought a cell search slip to the door.  He then asked, "Daniels, what do you want done with the tennis [shoes] confiscated from your cell?"  Daniels said, "Send them home."  C/O Keenan further asked, "Do you have any money on the books?"  Daniels replied, "I'll call my people and have some sent."  C/O Keenan said, "You need money on your books now."  [Plaintiff] intervened by saying, "He has 14-days to get money on his books for mail-out of property."  C/O Keenan then stated, "Daniels, if you want the other pair back, you must turn in the ones in the cell."  [Daniels] had no other tennis [shoes] in the cell.  The tennis [shoes] [Keenan] referred to belonged to [plaintiff], which is on my property card.  C/O Keenan then walked away.

(Dkt. No. 4 at 65.)

Plaintiff's allegations are insufficient to state a cognizable civil rights claim against defendant Keenan.  The fact that defendant Keenan was working on the same evening as defendant LaRosa, or that defendant Keenan previously searched plaintiff's cell and confiscated nothing in the prior cell search, do not demonstrate a constitutional violation.  Plaintiff identified no specific fact suggesting that defendant Keenan was involved in the cell search, was aware of grievance MCSP-09-01626, confiscated the tennis shoes, or that defendant Keenan took some adverse action against plaintiff.  None of the facts concerning defendant Keenan's visit to the cell after the cell search can be construed as adverse to plaintiff or suggest that Keenan's actions did not advance a legitimate penological goal.  Moreover, plaintiff failed to provide any additional factual information as to Keenan's alleged involvement prior to the cell search or with defendant LaRosa in the opposition to the motion to dismiss.

1    It appears that plaintiff believes that some statement defendant Keenan made at

2  plaintiff's cell after the cell search was performed by defendant LaRosa "suggests" defendant

3  Keenan was "inside the cell with LaRosa."  However, plaintiff failed to identify which statement

4  made by defendant Keenan suggests Keenan was inside the cell with LaRosa and why plaintiff

5  believes that statement suggests defendant Keenan's presence.

6    After carefully reviewing the amended complaint and the exhibits provided by

7  plaintiff, the undersigned concludes that plaintiff failed to state a cognizable civil rights claim

8  against defendant Keenan based on plaintiff's allegation that defendant LaRosa searched

9  plaintiff's cell on September 16, 2009, allegedly in retaliation for plaintiff filing grievance

10  MCSP-09-01626.  Plaintiff's cell search claim against defendant Keenan should be dismissed.  In

11  an abundance of caution, plaintiff's cell search claim against defendant Keenan is dismissed

12  without prejudice to plaintiff filing a motion to amend, accompanied by a proposed second

13  amended complaint, if plaintiff can allege sufficient facts to demonstrate that defendant Keenan

14  had a role in the September 16, 2009 cell search, and that defendant Keenan's actions were

15  allegedly taken in retaliation for plaintiff filing the double-celling grievance.

16    In addition, plaintiff is hereby informed that the court cannot refer to a prior

17  pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that

18  an amended complaint be complete in itself without reference to any prior pleading.  This

19  requirement exists because, as a general rule, an amended complaint supersedes the original

20  complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended

21  complaint, the original pleading no longer serves any function in the case.  Therefore, in a second

22  amended complaint, as in an original complaint, each claim and the involvement of each

23  defendant must be sufficiently alleged.  If plaintiff seeks leave to amend, plaintiff shall also

24  include his retaliation claim against defendant LaRosa in the proposed second amended

25  complaint.

26  ////

ii.  Role in Inmate Grievance Process

To the extent plaintiff alleges defendants Foston, Knipp and Thomason violated plaintiff's civil rights based on their role in the inmate grievance process, such claim is unavailing.  Prisoners have no stand-alone due process rights related to the administrative grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).  Put another way, prison officials are not required under federal law to process inmate grievances in a specific way or to respond to them in a favorable manner.  Because there is no right to any particular grievance process, plaintiff cannot state a cognizable civil rights claim for a violation of his due process rights based on allegations that prison officials ignored or failed to properly process grievances.  See, e.g., Wright v. Shannon, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Walker v. Vazquez, 2009 WL 5088788, at *6-7 (E.D. Cal. Dec.17, 2009) (plaintiff's allegations that prison officials failed to timely process his inmate appeals failed to a state cognizable under the Fourteenth Amendment); Towner v. Knowles, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegations that prison officials screened out his inmate appeals without any basis failed to indicate a deprivation of federal rights); Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").  Therefore, plaintiff's due process claims against defendants Foston, Knipp and Thomason should be dismissed for failure to state a cognizable civil rights claim.

iii.  Eighth Amendment Claim

To the extent that plaintiff attempts to raise an Eighth Amendment challenge regarding the September 16, 2009 cell search, his claim fails.  In Vigliotto v. Terry, 873 F.2d 1201 (9th Cir. 1989), an inmate brought a § 1983 action alleging that prison officials had violated

his Eighth amendment rights by conducting several harassing searches, one of which involved

the confiscation of legal materials.  Id.  The district court granted summary judgment to the

prison officials.  Id.  The Ninth Circuit cited Hudson v. Palmer, 468 U.S. 517 (1982), for the

proposition that "[t]he Eighth Amendment protects prisoners from searches conducted only for

'calculated harassment.'"  Vigliotto, 873 F.2d at 1203.  However, the Ninth Circuit affirmed the

district court noting that only one search could be substantiated, and that a "single incident is

insufficient to satisfy Whitley [v. Albers, 475 U.S. 312 (1986)]."  Id.  Here, plaintiff claims that

the September 16, 2009 cell search was allegedly performed in retaliation.  This allegation is

insufficient to state a cognizable civil rights claim under the Eighth Amendment.  Thus,

plaintiff's Eighth Amendment challenge should also be denied.

iv.  <u>Failure to Follow State Prison Regulations</u>

In plaintiff's fourth and fifth claims for relief, plaintiff alleges defendants

Harrington, Thomason, Knipp, Texeira, Martel, Wilkins and Foston failed to apply rules, policies

and regulations to protect plaintiff's due process rights, in violation of plaintiff's Eighth[11]

Amendment rights; and raises a supplemental state law claim alleging that defendants failed to

follow CDCR rules and regulations.  Defendants contend that plaintiff failed to state a cognizable

claim under any legal theory in connection with plaintiff's claim that defendants failed to follow

state prison regulations.

The Fourteenth Amendment provides that no state shall deprive a person of life,

liberty, or property without due process of law.  These procedural guarantees apply only when a

constitutionally-protected liberty or property interest is at stake.  Board of Regents v. Roth, 408

U.S. 564, 569-70 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the

need for procedural protections in every instance involving the state's deprivation of an

---

[11]  It appears plaintiff's use of the Eighth Amendment was in error.  In his opposition, plaintiff emphasizes the Fourteenth Amendment in connection with this claim.  (Dkt. No. 50 at 33.)

1   individual's liberty, but only when there is a cognizable liberty interest at stake), overruled in part

2   on other grounds by Paul v. Davis, 424 U.S. 693 (1976).  Protected liberty interests arise from the

3   Fourteenth Amendment's Due Process Clause itself, or from state laws or regulations deemed to

4   have created a liberty interest cognizable as a civil right.  Meachum v. Fano, 427 U.S. 215,

5   224-27 (1976).

6          Although plaintiff stated a cognizable retaliation claim based on the First

7   Amendment, the Fourteenth Amendment does not provide a legal basis for a retaliation claim.

8   See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (retaliatory actions taken against

9   a prisoner for exercising his right to file grievances violates the First Amendment); See also Pratt

10  v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (retaliation cases in the Ninth Circuit "fall within

11  the 'other protection[s] from arbitrary state action' which the [Supreme] Court appears to

12  envision, because they are based upon protection of the prisoner's First Amendment rights, and

13  not their Due Process rights."); Burton v. Jones, 321 F.3d 569, 573 (6th Cir. 2003) (Fourteenth

14  Amendment does not provide a legal theory under which a retaliation claim could be brought),

15  abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 217 (2007).  Also, it is well-

16  established that inmates do not have any Fourth Amendment claim with respect to cell searches.

17  Hudson, 468 U.S. at 525-26 ("society is not prepared to recognize as legitimate any subjective

18  expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the

19  Fourth Amendment proscription against unreasonable searches does not apply within the

20  confines of the prison cell.")

21          Moreover, state regulations give rise to a liberty interest protected by the Due

22  Process Clause of the federal constitution only if those regulations pertain to "freedom from

23  restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary

24  ////

25  ////

26  ////

1    incidents of prison life." <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995).[12]  Having one's cell

2    searched does not constitute an atypical and significant hardship.  <u>See</u> <u>Mitchell v. Dupnik</u>, 75

3    F.3d 517, 523 (9th Cir. 1996) (inspection of prisoner's legal papers during cell search where

4    prisoner was not present does not "present the type of atypical, significant deprivation in which a

5    state might conceivably create a liberty interest.")

6            Plaintiff argues that a state statute can give rise to federally protected due process

7    interests, citing <u>Groten v. California</u>, 251 F.3d 844 (9th Cir. 2001).  While "state statutes

8    providing for particular procedures may create entitlements protected by due process, " . . . "not

9    every procedural statute creates entitlements." <u>Id.</u> at 850.  The court in <u>Groten</u> addressed the

10   licensing or certification of real estate appraisers under California Code of Regulations Section

11   3569, not administrative procedures in the prison context.  <u>Id.</u>  The state regulations upon which

12   plaintiff relies, *inter alia*, Cal. Code Regs. tit. 15, §§ 3084.1 & 3287, involve prison

13   administrative procedures and do not implicate a constitutional liberty interest.  Moreover, in

14   general, prison officials' housing and classification decisions do not give rise to federal

15   constitutional claims encompassed by the protection of liberty and property guaranteed by the

16   Fifth and Fourteenth Amendments.  <u>See</u> <u>Board of Regents</u>, 408 U.S. at 569.[13]  Accordingly,

17

18       [12]  "[W]e recognize that States may under certain circumstances create liberty interests
     which are protected by the Due Process Clause.  <u>See also</u> <u>Board of Pardons v. Allen</u>, 482 U.S.
19   369 (1987).  But these interests will be generally limited to freedom from restraint which, while
     not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due
20   Process Clause of its own force, <u>see</u>, <u>e.g.</u>, <u>Vitek v. Jones</u>, 445 U.S. 480, 493 (1980) (transfer to
     mental hospital), and <u>Washington v. Harper</u>, 494 U.S. 210, 221-222 (1990) (involuntary
21   administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on
     the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484.

22

23       [13]  Similarly, the Constitution does not guarantee a prisoner placement in a particular
     prison or protect an inmate against being transferred from one institution to another.  <u>Meachum</u>,
24   427 U.S. at 223-225; <u>see</u> <u>Rizzo v. Dawson</u>, 778 F.2d 527, 530 (9th Cir. 1985) (prison authorities
     may change a prisoner's "place of confinement even though the degree of confinement may be
25   different and prison life may be more disagreeable in one institution than in another" without
     violating the prisoner's due process rights).  Also, plaintiff does not have a liberty interest in
26   selecting his cellmate.  <u>See</u> <u>Bjorlin v. Hubbard</u>, 2010 WL 457685, at *1 (E.D. Cal. Feb. 4, 2010)
     ("nor even if Plaintiff has been placed with a cellmate not of his own choosing would his right to

1  plaintiff failed to state a federal due process claim or Fourteenth Amendment violation in his

2  fourth claim for relief, and it should be dismissed.

3          Additionally, while Title 15 of the California Code of Regulations governs the

4  conduct of prison employees, it does not provide a cause of action against them.  See, e.g.,

5  Chappell v. Newbarth, 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is

6  no private right of action under Title 15 of the California Code of Regulations); Parra v.

7  Hernandez, 2009 WL 3818376, at **2, 8 (S.D. Cal. Nov. 13, 2009) (same).  Moreover, plaintiff's

8  claims relating to the allegedly retaliatory cell search will be addressed through plaintiff's First

9  Amendment claim.  Because plaintiff fails to state a claim upon which relief may be granted

10  based on the violations of Title 15 regulations, plaintiff's supplemental state law claim should

11  also be dismissed.

12          Accordingly, the court recommends that the motion to dismiss claims four and

13  five be granted.

14  V.  Conclusion

15          For all of the above reasons, this action shall proceed solely on plaintiff's claim

16  that defendant LaRosa searched plaintiff's cell on September 16, 2009, allegedly in retaliation for

17  plaintiff filing grievance MCSP-09-01626, in violation of plaintiff's First Amendment rights, and

18  plaintiff's claims against defendant Gamez.

19          IT IS HEREBY ORDERED that:

20          1.  Plaintiff's July 5, 2011 motion for sanctions (dkt. no. 53) is denied; and

21          2.  Plaintiff's claim against defendant Keenan based on the September 16, 2009

22  cell search is dismissed without prejudice to plaintiff filing a motion to amend, accompanied by a

23  proposed second amended complaint.  Plaintiff's proposed second amended complaint shall

24

25  due process be implicated"); see also Allen v. Figueroa, 56 F.3d 70, at *7 (9th Cir. 1995)
    (plaintiff did not have an Eighth Amendment or due process right to be allowed to choose his
26  cellmate for compatibility).

comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and

the Local Rules of Practice.  The proposed second amended complaint must also bear the docket

number assigned to this case and must be labeled "Second Amended Complaint."

        IT IS RECOMMENDED that:

        1.  The March 8, 2011 motion to dismiss (dkt. no. 38), based on plaintiff's failure

to exhaust administrative remedies, filed by defendants Knipp, White, Crosby, Martel,

Thomason, Grzebyk, Texeira, Foston, Harrington and Keenan, be granted;

        2.  Defendant Wilkins' April 7, 2011 motion to dismiss (dkt. no. 45), based on

plaintiff's failure to exhaust administrative remedies, be granted;

        3.  The motion to dismiss for failure to state a claim filed by defendants Foston,

Knipp and Thomason be granted;

        4.  The motion to dismiss plaintiff's due process claims against defendants

Foston, Knipp and Thomason be granted;

        5.  The motion to dismiss plaintiff's Eighth Amendment challenge to the

September 16, 2009 cell search be granted;

        6.  Defendants' motion to dismiss plaintiff's claims four and five concerning

defendants' failure to follow state regulations be granted;

        7.  Plaintiff's claim against defendant Keenan in connection with the September

16, 2009 cell search be dismissed, based on plaintiff's failure to state a cognizable civil rights

claim; and

        8.  Defendant LaRosa be directed to file an answer within fourteen days from the

date of any order adopting the instant findings and recommendations.

        These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 30, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/dixo1441.mtd