UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL STEVEN DIXON,<br><br>        Plaintiff,<br><br>   v.<br><br>S. LaROSA,<br><br>        Defendant. | No. 2:10-cv-1441 TLN KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

Introduction

      Plaintiff is a state prisoner proceeding without counsel. The sole issue remaining in this civil rights action is whether defendant LaRosa's September 16, 2009 search of plaintiff's cell was performed in retaliation for plaintiff's August 23, 2009 grievance regarding double-celling.[1] Defendant's motion for summary judgment is now before the court. Plaintiff filed an opposition; no reply was filed. As set forth more fully below, the undersigned recommends that defendant's motion for summary judgment be granted.

////

////

---

[1] By order filed December 23, 2011, defendants' motion to dismiss was granted as to all claims and all defendants, with the exception of the instant claim. (ECF No. 85 at 1.) Thus, the court disregards plaintiff's arguments and declarations concerning subsequent building and cell moves.

1

Defendant's Motion for Summary Judgment

Defendant LaRosa moves for summary judgment on the grounds that it is undisputed that defendant did not violate plaintiff's First Amendment rights, and that defendant is entitled to qualified immunity.

    A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.

1  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

2  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

3  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

4  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

5  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

6        By contemporaneous notice provided on July 3, 2013 (ECF No. 108-1), plaintiff was

7  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

8  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*);

9  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

10        B.  Facts

11        For purposes of the instant motion for summary judgment, the court finds the following

12  facts undisputed, unless otherwise noted:

13        1.  At all relevant times, plaintiff was in the custody of the State of California, and

14  housed at Mule Creek State Prison ("MCSP"), in Building 1.

15        2.  Officers Irwin and Grzebyk were the two Floor Officers working in Building 1 during

16  the 6:00 a.m. to 2:00 p.m. shift, and Officers LaRosa and Keenan were the two Floor Officers

17  working in Building 1 during the 2:00 p.m. to 10:00 p.m. shift.

18        3.  On August 17, 2009, Plaintiff complained to Officer Irwin that he was not compatible

19  with his cell partner, because his cell partner was keeping a pet rodent in the cell.

20        4.  On August 17, 2009, Officer Grzebyk conducted a cell search and removed the rodent

21  from the cell.

22        5.  Plaintiff's cellmate was unhappy once the rodent was confiscated, and became angry

23  with plaintiff once the cellmate realized that during the cell search his television switch had been

24  damaged and his property confiscated.  (ECF No. 112-1 at 17.)

25        6.  Plaintiff prepared a CDC Form 602 inmate grievance, reiterating the events of August

26  17, 2009. (ECF No. 112-1 at 15).  In the action requested portion of the form, plaintiff wrote:

27  ////

28  ////

4

> Per Penal Code § 2709, all MCSP prison officials follow all CDCR ["California Department of Corrections and Rehabilitation"] directives, policies and procedures governing double-celling and integrated inmate housing. Issue an updated memorandum consiste[nt] with these stated policies and procedures, listed herein. NOT retaliate against this writer in any way, e.g., not changing his cell.

(ECF No. 112-1 at 15.) This grievance was assigned Log Number MCSP 09-1626.

7. On August 23, 2009, plaintiff submitted Log No. MCSP 09-1626, to the MCSP Appeals Office, by dropping it into the mailbox in the Housing Unit. The grievances in the mailbox are processed to the addressed location within the prison.

8. The content of the grievance Log No. 09-1626 that plaintiff filed on August 23, 2009, contains no reference to defendant LaRosa, or any action by defendant LaRosa.

9. On August 27, 2009, the grievance was received by the Appeals Coordinator and rejected for filing at that time because the Appeals Coordinator deemed the grievance lacked supporting paperwork that was necessary for the grievance to be processed. The Appeals Coordinator sent plaintiff a letter requesting plaintiff attach additional paperwork.

10. On August 28, 2009, plaintiff submitted an inmate request for interview stating that "[t]his 602 is about staff's failure to follow procedures dealing with double-celling, and my request that a memorandum be issued to alleviate the non-compliance." (ECF No. 108-3 at 32; 112-1 at 31.) On August 28, 2009, plaintiff responded to the Appeals Coordinator, complaining that the requested paperwork was not necessary or available, and resubmitting the appeal and asking that the appeal be processed without it.

11. On September 1, 2009, the Appeals Coordinator again sent plaintiff a letter rejecting the grievance, this time because plaintiff had not submitted the grievance to the correctional staff directly involved for an informal level of review.

12. Plaintiff next submitted the grievance to Correctional Officer Irwin. On September 7, 2009, Officer Irwin responded as follows:

> I C/O Irwin spoke to you on 9-7-09 for clarification on your appeal. You stated you want to see the procedures on integrated housing. DOM Chapter 5 Article 47 on Jan. 2008 54055.7 Inmates are to be housed in first available bed per housing code.

1  (ECF No. 112-1 at 15.)[3]

2  13. On September 7, 2009, after plaintiff received Officer Irwin's response, plaintiff again submitted his grievance to the appeals office at MCSP, indicating that he was dissatisfied with the informal response that Officer Irwin provided.  Plaintiff's grievance was received by the Appeals Office on September 8, 2009, for a first formal level of review.

14.  The grievance plaintiff submitted on September 7, 2009, and was received by the Appeals Office on September 8, 2009, again contained no reference to defendant LaRosa.

15.  At the first formal level of review, the grievance was assigned to Sergeant J. Dominguez, who interviewed plaintiff for the appeal on September 29, 2009, and provided plaintiff a response, authorized by the Associate Warden, on October 6, 2009.[4]  (ECF No. 108-3 at 16, 23-24; 112-1 at 19-20.)

16. On October 10, 2009, plaintiff resubmitted Log No. 09-01626 for review at the second level.  (ECF No. 112-1 at 16.)  Plaintiff stated:

> The 9-29-09 response does not address the August, 009 DOM Supplement, Section 54055 which states inmates are responsible for participating in decisions effecting his housing.  Also, see attach[ed] declaration detailing the retaliatory methods used against me by Building One correctional officers.

(ECF No. 112-1 at 16.)  In the declaration, plaintiff alleged that officers in building 1 were using cell searches and unwarranted cell moves to punish and harass plaintiff.  (ECF No. 112-1 at 23.)  Plaintiff noted that he had filed a 602 against defendant LaRosa and other officers on September 18, 2009, and complained that defendant LaRosa had targeted plaintiff with an "arbitrary and excessive" cell search on September 16, 2009, in retaliation for plaintiff filing grievance No. 09-01626, as evidenced by defendant having plaintiff's property card, searching plaintiff's cell too frequently, and taking property not normally confiscated from an inmate's cell.  (ECF No. 112-1 at 24-25.)

---

[3]  Plaintiff argues that Officer Irwin's response failed to address the other policies and procedures impacting double-celling procedures that were listed in the appeal.  (ECF No. 112-1 at 6.)

[4]  Plaintiff appears to dispute fact 15, but provided no facts or argument to support such dispute. (ECF No. 112-1 at 3, 6.)

17. Defendant LaRosa conducted a search of the cell occupied by plaintiff on September 16, 2009.

18. On September 16, 2009, defendant LaRosa had plaintiff's personal property card from MCSP Receiving and Release during the search of plaintiff's cell. (ECF No. 112 at 12.)

19. Second and Third Watch Floor Officers in each building are required to search a minimum of three cells per shift. (ECF No. 108-3 at 8; 112-1 at 94.)

20. On September 16, 2009, defendant LaRosa confiscated items, including expired medications, excess items, cleaning supplies, and a plastic bucket, from plaintiff's cell during a cell search.

21. After the cell search, plaintiff submitted a separate grievance, Log. No. MCSP 09-02012, on September 18, 2009. In this grievance, entitled "Cell Trashed During Improperly Frequent Cell Search," plaintiff complained that defendant LaRosa's September 16, 2009 cell search was done in order to retaliate against plaintiff for filing Log No. 09-01626 about the cell assignment procedures.

22. On September 22, 2009, Sergeant Gamez provided plaintiff an informal level response to Log No. 09-02012, explaining that he had interviewed Officer LaRosa to ask about the September 16, 2009 cell search, and Sgt. Gamez determined that LaRosa had not retaliated against plaintiff for filing Log. No. 09-01626, because LaRosa was not aware of the housing assignment grievance.

23. In submitting Log No. 09-2012 for the next level of review, plaintiff claimed that Officer LaRosa must have known that plaintiff had filed Log No. 09-01626, because the correctional staff must have discussed the grievance during shift change. He further claimed the thoroughness of the search was evidence of a retaliatory intent.

C. Standards

In the prison context, a First Amendment retaliation claim has "five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

7

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Filing an inmate grievance is "protected conduct" for purposes of a retaliation claim. See Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997). Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Rhodes 408 F.3d at 568, n.11. A warning or a threat implying adverse consequences for engaging in protected conduct may be sufficient to constitute "adverse action." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009).

In addition, plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's actions. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Hines, 108 F.3d at 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995).

D. Analysis

Adverse Action & Protected Conduct

There is no dispute that defendant searched plaintiff's cell on September 16, 2009, so the first element of plaintiff's retaliation claim, an adverse action, has been met. It is also "well established that among the rights they retain, prisoners have a First Amendment right to file prison grievances," and that "[r]etaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" Brodheim, 584 F.3d at 1269 (citations omitted); see also Bruce, 351 F.3d at 1288; Rhodes, 408 F.3d at 567. Therefore, the third element of plaintiff's retaliation claim, that the prisoner's conduct allegedly causing the retaliation claim was "protected," has also been met. Rhodes, 408 F.3d at 567.

Retaliatory Motive

With regard to the second element, defendant has provided non-retaliatory reasons for why the search was conducted. Defendant declares that his search of plaintiff's cell was one of the routine cell searches required in his job as floor officer, and that the items removed from

8

plaintiff's cell were all contraband that inmates are not authorized to possess.  (ECF No. 108-3 at 8, 10.)  Defendant declares that the search was conducted in accordance with institutional regulations for the purpose of monitoring inmate cells and keeping the institution free of contraband, and that it was not done to target or harass plaintiff, or for any other improper purpose.  (ECF No. 108-3 at 10.)  Defendant also declares that the first time he became aware of plaintiff's grievance Log No. 09-01626 was when Sgt. Gamez interviewed defendant regarding plaintiff's complaint that defendant had conducted the September 16, 2009 cell search in order to retaliate against plaintiff for the cell assignment grievance.  (ECF No. 108-3 at 8.)  Defendant declares that because grievance Log No. 09-01626 did not make a complaint about him, defendant LaRosa "was not informed of the grievance, and had no reason to be involved in it."  (ECF No. 108-3 at 8.)

No declarations were provided by Officers Irwin and Grzebyk.

However, plaintiff provided circumstantial evidence in support of his claim that the search was conducted as retaliation for his prison grievance.

In his declaration, plaintiff states he has served over 28 years in state prison, and contends that he is "an expert on serving time and gauging situations with above average success."  (ECF No. 4 at 18.)  Plaintiff claims that "just as inmates share information with each other about officers being fair or unfair, correctional officers do share information among themselves to get a profile on all inmates, [and] information that assists officers in performing their duties."  (ECF No. 4 at 18.)

Plaintiff contends that the fact that defendant possessed plaintiff's property card during the search of plaintiff's cell, and that his cell was searched twice in less than a week, demonstrates that the cell search was planned and not random, thus raising an inference that the search was retaliatory.  (ECF No. 108-3 at 56.)[5]

Plaintiff declares that defendant LaRosa's cell search was "arbitrary and an excessive reaction to [plaintiff's] 602 inmate appeal, which did not serve any legitimate penological safety

---

[5] The court refers to the copy provided by defendant because plaintiff's copy cuts off pertinent portions.  (ECF No. 4 at 73.)

9

1    and security concerns, particularly since [plaintiff has] been disciplinary free since 1992." (ECF
2    No. 108-3 at 56.)  Plaintiff declares that on or about September 7, 2009, during his interview with
3    Officer Irwin, Officer Grzebyk, the officer who removed the rodent, intervened and "openly
4    asked [plaintiff] to drop the 8/23/09 602," and that Officer Irwin "would accommodate [plaintiff]
5    in getting any cell [he] wanted as long as [he] gave Officer Irwin advanced notice." (ECF No. 12
6    at 8; 108-3 at 56.)  Plaintiff appears to argue that the efforts by Officers Irwin and Grzebyk to
7    persuade plaintiff to drop his double-celling grievance support his theory that either one or both
8    officers told defendant LaRosa about the double-celling grievance prior to or on September 16,
9    2009. (ECF No. 112 at 7.)

10           Inmate Joseph Viruegas provided a declaration stating that on September 16, 2009, he saw
11   plaintiff's cell after he and plaintiff returned from chow and noted that "they trashed [plaintiff's]
12   cell." (ECF No. 4 at 77.)  In a second declaration, inmate Viruegas confirmed that he was
13   interviewed by Sgt. Gamez in connection with plaintiff's grievance concerning the September
14   16, 2009 cell search, and "explained to him that the cell was thrashed and items were scattered
15   around the cell as if a hurricane had hit the place." (ECF No. 4 at 78.)

16           In addition, plaintiff provided cell search receipts for fourteen searches of plaintiff's cell
17   from August 9, 2009, to August 29, 2010.  In nine of the searches, nothing was confiscated by the
18   searching officer.  (ECF No. 112-1 at 72-85.)  Multiple items were confiscated in four of the cell
19   searches; however, 4 and 5 items were taken in two of the searches (ECF No. 112-1 at 79, 83).  In
20   the August 17 2009 search in which the rodent was removed, 8 items were removed.  (ECF No.
21   112-1 at 73.)  But in the cell search at issue on September 16, 2009, at least 18 items were
22   removed.  (ECF No. 112-1 at 75.)  Plaintiff provided declarations from four other inmates who
23   reviewed the cell search receipt and declared that each had never had so many items confiscated
24   during a cell search, and "that it looked like the officer was angry with Mr. Dixon." (ECF No.
25   112-1 at 99, 101, 103, 105.)

26           Moreover, plaintiff disputes that the cleaning supplies and bucket were contraband.  In his
27   verified amended complaint, plaintiff states that he had the very same items when both defendant
28   LaRosa and Officer Keenan searched his cell on August 8, 2009, and September 10, 2009,

1   respectively.  (ECF No. 12 at 9.)  Plaintiff argues that the inmate prison canteen is stocked with
2   washing powder and liquid detergents.  (ECF No. 112-1 at 7.)  In addition, at MCSP hand soaps,
3   cleansing powder, i.e. Ajax, scrubbing pads, rags, plastic buckets, and small hand brooms were
4   provided to inmates.  (ECF No. 112-1 at 7.)   Plaintiff counters that plastic containers are not a
5   safety and security issue because many items sold to inmates in the canteen and through various
6   approved vendors supply quarterly packages to inmates in plastic containers, including plastic
7   storage containers.  (ECF No. 112-1 at 7.)  Moreover, plaintiff provided a copy of § 54030.19 of
8   the CDCR Operations Manual that describes property restrictions, and liquid soap and clear
9   storage containers are allowed.  (ECF No. 112-1 at 111, 113.)

10   Plaintiff also provided declarations from five other inmates who declare that while at
11   MCSP, they were allowed to keep in their cells cleaning supplies such as cleanser, disinfectant,
12   soap, cleaning rags, and green scrub pads, which were usually distributed weekly by inmate
13   porters or tier tenders assigned as building workers.  (ECF No. 112-1 at 98, 100, 102, 104, 106.)
14   Each inmate declares that because inmates were permitted to stock cleaning detergents and soap
15   in their cells, they were also permitted to keep 3-5 gallon white buckets "to wash our state and
16   personal clothing.  Most inmates possessed their own buckets."  (Id.)  These buckets would be
17   confiscated on the "rare occasion a building officer discovered that the inmate had abused the
18   privilege by using his bucket for making 'pruno' (wine)."  (Id.)  Each inmate declares that to their
19   knowledge, these buckets were never used to manufacture weapons.  (Id.)

20   It can be difficult to establish the motives or intent of a defendant; thus, plaintiff may rely
21   on circumstantial evidence.  Hines, 108 F.3d at 267-68.  Retaliatory motive may be shown by the
22   timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct
23   evidence.  Bruce, 351 F.3d at 1288-89; Pratt, 65 F.3d at 808.  Although a retaliatory motive may
24   be inferred from the timing and nature of the alleged retaliatory activities, a mere allegation of a
25   retaliatory motive is insufficient to defeat a motion for summary judgment, see Taylor v. List, 880
26   F.2d 1040, 1045-46 (9th Cir. 1989) (finding conclusory allegations insufficient to establish that
27   any individual prison official acted in retaliation for protected conduct).  The prisoner must
28   submit evidence to establish a link between the exercise of constitutional rights and the allegedly

11

1  retaliatory action.  Compare Pratt, 65 F.3d at 807 (finding insufficient evidence), with
2  Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989) (finding sufficient
3  evidence).  In Pratt, the court focused on the timing of the alleged retaliatory actions and "most
4  importantly" on whether there was evidence that defendants were "actually aware" of plaintiff's
5  First Amendment activities.  Id., 65 F.3d at 808.
6      Here, despite his evidence, plaintiff has failed to establish a causal nexus between the
7  search of his cell and the prior protected activity.  In other words, plaintiff has failed to adduce
8  evidence that defendant LaRosa was actually aware of plaintiff's August 23, 2009 grievance prior
9  to the September 16, 2009 cell search.  It is undisputed that defendant was not initially named in
10 the double celling grievance.  None of the declarations offer testimony connecting the cell search
11 with plaintiff's double-celling grievance.  Plaintiff declares that correctional officers discuss
12 inmate grievances, and suggests that Officers Irwin or Grzebyk told defendant LaRosa about
13 plaintiff's grievance during the shift change.  However, plaintiff does not assert that he has
14 personal knowledge of a conversation between defendant and Officers Irwin or Grzebyk;
15 therefore, he cannot relate its substance.  Without evidence demonstrating that Officers Irwin or
16 Grzebyk told defendant, or more specific factual support raising an inference that there was such
17 a communication or connection, such allegations are simply speculation.   Plaintiff's reliance on
18 the general nature of communication among officers in the prison setting is insufficient to defeat
19 defendant's declaration that he was not told about plaintiff's double-celling grievance prior to the
20 September 16, 2009 cell search.  Plaintiff's theory that the efforts of Officers Irwin and Grzebyk
21 to persuade plaintiff to drop the double celling grievance demonstrates that they told defendant
22 LaRosa about the grievance, or told him to search the cell in retaliation, is too attenuated to
23 demonstrate a retaliatory motive on the part of defendant LaRosa.
24     Moreover, plaintiff failed to demonstrate that a jury could infer retaliatory motive from
25 the timing of the cell search.  Twenty days elapsed between the submission of plaintiff's
26 grievance on August 23, 2009, and September 16, 2009, the date defendant LaRosa searched
27 plaintiff's cell.  Nine days elapsed between the date Officer Irwin spoke with plaintiff about the
28 double-celling grievance and the September 16, 2009 cell search.  Plaintiff failed to explain how

the court can infer a retaliatory motive on the part of defendant LaRosa when there was no close proximity in time between these events, and no evidence suggesting he was aware of the protected conduct.  In Bruce, the Ninth Circuit found Bruce had established a triable issue of fact where the timing of his gang validation was suspect because it came "soon after his success in the prison conditions grievances."  Id., 351 F.3d at 1288.  In Uribe v. McKesson, 2011 WL 9640 (E.D. Cal. Jan. 3, 2011), all the conduct at issue took place on one day, between 3:00 p.m. and 7:00 p.m.  In Williams v. Williams, 2012 WL 1094351 (N.D. Cal. March 29, 2012), the alleged retaliatory conduct took place four days after the protected conduct.  Here, the court finds nothing suspect about the timing to warrant an inference as to retaliatory motive.

Plaintiff argues that the "excessive" cell search "is consistent with defendant being aware of" plaintiff's grievance Log No. 09-01626.  (ECF No. 112-1 at 8.)  However, an allegedly "excessive" cell search, standing alone, fails to demonstrate defendant was aware of the protected conduct.  Aside from plaintiff's speculation that other officers told defendant about the grievance, there is no evidence from which a jury can infer that defendant's cell search was motivated by the August 23, 2009 grievance.  Absent a connection or link between defendant and the August 23, 2009 grievance, one allegedly excessive cell search, standing alone, is insufficient.

Viewing the evidence in plaintiff's favor, and assuming defendant LaRosa was angry, planned to search plaintiff's cell on September 16, 2009, and took plaintiff's bucket and cleaning supplies when inmates are normally allowed to retain them at MCSP, no reasonable jury could find that such search was connected to or motivated by plaintiff's double-celling grievance. Importantly, none of the statements plaintiff attributes to defendant LaRosa relate to plaintiff filing grievances.  (ECF No. 108-3 at 54.)[6]  None of plaintiff's evidence connects defendant

---

[6] In grievance Log No. 09-02012, plaintiff references a confrontation with defendant LaRosa on August 17, 2009, about a week prior to the filing of grievance Log No. 09-01626.  (ECF No. 108-3 at 54.)  Plaintiff recounted the following exchange between him and defendant LaRosa:

> In fact, regarding the 8/17/09 cell search:  upon returning from work and discovering that my cell had been searched, I respectfully asked C/O LaRosa did he know who had searched my cell.  He said, "No, I just came on."  I said, "I'm only asking because it was just searched a week or so ago."  He antagonistically replied, "I can search your cell every day if I want!"  I responded, "That's not what Title 15 says."  Surprisingly, in a boisterous [sic] and

1    LaRosa to the double-celling grievance, either directly or through reasonable inference.  Plaintiff
2    did not specifically name defendant in grievance Log No. 09-01626 until October 10, 2009, after
3    the September 16, 2009 cell search.  Moreover, plaintiff's grievance concerning the allegedly
4    retaliatory cell search, submitted on September 18, 2009, cannot demonstrate retaliatory motive
5    for a cell search conducted prior to the filing of such grievance.
6        Because plaintiff cannot demonstrate a genuine issue of material fact as to the second
7    element of retaliation, see Rhodes, 408 F.3d at 567-68, it is not necessary to discuss the remaining
8    elements.  For the foregoing reasons, defendant is entitled to summary judgment.
9        D.  Conclusion
10       Based on the above, the undersigned recommends that defendant's motion for summary
11   judgment be granted.
12   Alternative Grounds
13       Because defendant is entitled to summary judgment, the court need not address
14   defendant's argument that he is entitled to qualified immunity.
15   Recommendation
16       Accordingly, IT IS RECOMMENDED that defendant's motion for summary judgment
17   (ECF No. 108) be granted.
18       These findings and recommendations are submitted to the United States District Judge
19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
20   after being served with these findings and recommendations, any party may file written
21   objections with the court and serve a copy on all parties.  Such a document should be captioned
22   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

---

belligerent tone, C/O LaRosa yelled, "I'll prove to you that I can search your cell whenever I want!" "Go to your cell!" I said, "I'm trying to talk sensible and you show an attitude just because I'm concerned about my cell being searched again so quickly." He said, "Lock up!" That was the only confrontation between C/O LaRosa and myself other than him taking shelves off my cell wall several months ago. . . .

(ECF No. 108-3 at 54.)

1 objections shall be served and filed within fourteen days after service of the objections. The
2 parties are advised that failure to file objections within the specified time may waive the right to
3 appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4 Dated:  February 18, 2014

6 /dixo1441.msj

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE